UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 30 BENEFIT FUNDS,<br><br>          Plaintiffs,<br><br>  -v-<br><br>NYACK HOSPITAL,<br>          Defendant. | No. 16-CV-6638 (KMK)<br><br>OPINION & ORDER |

Appearances

Lauren M. Kugielska, Esq.
Barnes, Iaccarino & Shepherd LLP
Elmsford, NY
*Attorney for Plaintiffs*

John H. Pope, Esq.
Epstein Becker & Green, P.C.
New York, NY
*Attorney for Defendant*

KENNETH M. KARAS, District Judge:

  The Trustees of the International Union of Operating Engineers, Local 30 Benefit Funds ("Plaintiffs"), bring this Action to compel an audit of the financial records of Nyack Hospital ("Defendant"), an employer that made contributions to the Plaintiffs' Funds. (*See* Compl. (Dkt. 1).) Plaintiffs have moved for summary judgment to compel this audit, while Defendant has refused to submit to the requested audit and has cross-moved for summary judgment, claiming that it is contractually obligated to make contributions to the Plaintiff Fund, but is not obligated to submit to an audit by contract, and ERISA does not require an audit under these circumstances. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Mem.") 8–12 (Dkt. No. 31).) Moreover, Defendant claims that Plaintiffs'

claim is barred as both untimely and by the doctrine of res judicata. (*See id.* at 4–8.) For the reasons below, Plaintiffs' Motion is denied and Defendant's Cross-Motion is granted.

I. Background

A. Factual History

The following facts are taken from the documents submitted and the Parties' respective statements of material facts pursuant to Local Civil Rule 56.1.[1] The facts as described below are not in dispute, except to the extent indicated.

Plaintiffs are the fiduciaries of jointly administered, multi-employer, labor management trust funds (the "Funds"). (*See* Pls.' Local Rule 56.1 Statement ("Pls.' 56.1") ¶ 1 (Dkt. No 26).) The Funds are established and maintained jointly by the International Union of Operating Engineers, Local 30 (the "Union") and various other employers and are formed in accordance with § 3(21)(A) and Section 502(a)(3) of the Employee Retirement Income Security Act, commonly known as "ERISA," 29 U.S.C. §§ 1002(21)(A) and 1132(a)(3), and § 302(c)(5)(1) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). (*Id.*) The Union and Defendant are parties to a series of collective bargaining agreements, but the Funds are not a party to any of the collective

---

[1] While Plaintiffs included a Rule 56.1 statement with their Motion for Summary Judgment, they have failed to submit any counterstatement to Defendant's Statement of Undisputed Material Facts, and therefore have failed to answer Defendant's Rule 56.1 statement. As such, they concede the truth of the statements made therein unless clearly controverted by the record. *See* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."); *O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 482 (S.D.N.Y. 2005) ("Courts in th[e] [Second] Circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party." (internal quotation marks omitted)). Accordingly, where Defendant's Rule 56.1 statement is unanswered, those facts are conceded.

bargaining agreements executed between the Union and Defendant. (*See* Def.'s Statement of Material Facts Not in Dispute ("Def.'s 56.1") ¶¶ 1–2 (Dkt. No. 33).) Separately, Plaintiffs have a Declaration of Trust ("Trust Agreement") and Collection Policy that define the operation of the Funds. (*See* Pls.' 56.1 ¶ 5.) Defendant is not a signatory to the Trust Agreement or Collection Policy, (*see* Def.'s 56.1 ¶¶ 5–6), though the Parties dispute whether, pursuant to the collective bargaining agreements, Defendant must comply with the terms of the Trust Agreement and Collection Policy, and furthermore, whether Defendant must allow an annual audit of its books and records, (*see* Pls.' 56.1 ¶ 5; Def.'s 56.1 Resp. and Obj's to Pls.' Rule 56.1 Statement of Material Facts ("Def.'s 56.1 Resp.") ¶ 5 (Dkt. No. 29)).[2]

As is relevant here, the Trust Agreement, to which Defendant is not a party, provides that the Trustees are empowered "to do all acts . . . which the Trustees deem necessary to accomplish the general objective of maintaining the plan solely in the interest of the participants and beneficiaries," and that this duty entails "[p]rocur[ing] an audit of the books of the Trust Fund" and grants the power to "audit . . . the payroll and/or other records of any [e]mployer . . . to the extent necessary to determine whether the proper [c]ontributions required to be made to the Trust Fund have been made." (Decl. of Michael Spillane ("Spillane Decl.") Ex. A. ("Trust Agreement") §§ 4.01, 4.02(g) and 4.03(o) (Dkt. No. 22).) The collective bargaining agreements, to which Plaintiffs are not a party, set forth various obligations with respect to Defendant's obligations to the Funds. (*See* Def.'s 56.1 ¶ 3.) As part of the most recent collective bargaining

---

[2] The Court held in *Trustees of Intern. Union of Operating Engineers Local 30 Benefits Funds v. Nyack Hosp.*, 975 F. Supp. 2d 365 (S.D.N.Y. 2013) ("*Trustees I*") that Defendant is "not a *de facto* party to the *entire* Trust Agreement," and that Defendant "is not bound by non-essential provisions of plan documents not signed by the employer that pays into a fund." *Id.* at 369–70. Accordingly, it is a legal question as to whether the provision of a document that was not signed by Defendant is essential to the management of the Funds.

3

agreement, Defendant is required to contribute 23.5%, multiplied by the gross payroll of the employees for the preceding month to the Funds, (*see* Spillane Decl. Ex. C ("2011 CBA") § 24.02), and Defendant is required to remit to Plaintiffs the benefit contributions and reports in a timely fashion, (*see* Pls.' 56.1 ¶ 6). The most recent collective bargaining agreement also provides that:

> The [F]unds shall be held and administered under the terms and provisions of the existing Trust Agreements and any amendments thereto and the Employee Retirement Income Security Act. An independent audit of each Plan shall be made annually and a statement of results shall be furnished to the Hospital upon request.

(2011 CBA § 24.05.)

The core of the Parties' dispute is whether the collective bargaining agreements and/or the Trust Agreement require Defendant to allow Plaintiffs to conduct an audit of Defendant's books and records. (*See* Pls.' 56.1 ¶ 7; Def.'s 56.1 Resp. ¶ 7.) Although the Parties dispute whether an audit is required under the relevant documents, it is undisputed that Defendant has refused Plaintiffs' request to permit access to Defendants' books and records for the purpose of conducting an audit. (*See* Pls.' 56.1 ¶ 8; Def.'s 56.1 Resp. ¶ 8.) Specifically, in 2010, Plaintiffs sought to audit Defendant's books for the period of January 16, 2003 through January 15, 2007. (*See* Def.'s 56.1 ¶ 8.) Defendant refused to permit the requested audit, and Plaintiffs thereafter received an arbitration award that purported to entitle Plaintiffs to the requested audit. (*See id.*) Plaintiffs filed suit in this Court to confirm the arbitration award, and Defendant cross-moved to have the award vacated and the Complaint dismissed. (*See id.* ¶ 9.) On September 27, 2013, the Court denied Plaintiffs' Motion To Confirm the Arbitration Award and granted Defendant's Cross-Motion To Vacate and Dismiss the Complaint. (*See id.* ¶ 10.) *See also Trustees I*, 975 F. Supp. 2d at 376. No appeal was taken. (*See* Def.'s 56.1 ¶ 10.)

4

Three years after *Trustees I*, Plaintiffs filed suit in this Court to compel an audit of Defendant's books and records. (*See id.* ¶ 11.; *see also* Compl.) The instant Complaint does not specify for which period an audit is requested. (*See generally* Compl.) Plaintiffs' 56.1 statement and moving papers are similarly devoid of any mention of the specific audit period at issue here. (*See generally* Pls.' 56.1; Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem.") (Dkt. No. 24); Spillane Decl.; Aff. of Lauren M. Kugielska, Esq., in Supp. of Pls.' Mot. for Summ. J. ("Kugielska Aff.") (Dkt. No. 23).)[3] By contrast, Defendant asserts that the relief sought by Plaintiffs "is an audit of the Hospital's books for the period January 16, 2003 through January 15, 2007." (Def.'s 56.1 ¶ 12.) According to Defendant, this representation was made clear at a conference held before Judge Briccetti on December 19, 2016, where Plaintiffs' counsel "stated that this Action is directed at compelling an audit for the period of January 16, 2003 through January 15, 2007."[4] (Decl. of John H. Pope, Esq., in Supp. of Def.'s Mot. for Summ J. ¶ 4 (Dkt.

---

[3] The only hint of any other specific period comes from a letter attached to the Kugeilska Affirmation, which states that the Funds have requested an audit for the period of January 1, 2010 through December 31, 2014. (*See* Kugeilska Aff. Ex. C (Letter from Anthony Cirotti to Terry LaFrancois (January 6, 2016) ("Cirotti Letter")).) However, Mr. Cirotti's own declaration makes no mention of this purported audit period, and instead generally attests to Defendant's denial of an audit "upon information and belief, since on or about 2010." (Decl. of Anthony Cirotti ("Cirotti Decl.") ¶ 4 (Dkt. No. 36).) Moreover, Plaintiffs' Opposition to Defendant's Motion for Summary Judgment makes no mention of any specific period, but rather states for the first time that the Funds are seeking "an audit of the Employer's books and records . . . for the period of the parties' collective bargaining agreement, which includes, but is not limited to, the 2003-2006 period." (Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J ("Pls.' Opp'n") 4 (Dkt. No. 37).)

[4] On December 26, 2016, in a letter to Judge Briccetti advocating that this case be designated as related to *Trustees I*, Defendant confirmed that Plaintiffs had made this representation regarding the relevant audit period. (*See* Letter from John H. Pope, Esq., to the Hon. Vincent L. Briccetti ("Pope Letter") 2 n.1 (Dkt. No. 13).) In their December 29, 2016 response, in which Plaintiffs directly countered Defendant's res judicata arguments, they made no contrary representation regarding the audit period. (*See* Letter from Lauren M. Kugielska, Esq. to the Hon. Vincent L. Briccetti ("Kugielska Letter") 1 (Dkt. No. 14).) Rather, Plaintiffs appear to confirm that this action is at some level based upon the very same actions that were the

No. 32).) Plaintiffs have not withdrawn this representation at any point prior to the filing of their Opposition brief, nor did Plaintiffs' Opposition brief cite to any record evidence that would contradict Defendant's assertion. (*See* Pls.' Opp'n 4.) *See also* S.D.N.Y. Civ. R. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). As previously discussed, because Plaintiffs have not opposed Defendant's 56.1 statement, as is required under this Court's local rules, nor have they specifically controverted this statement in any of their moving or opposition papers with record evidence, they have conceded the fact that the requested audit at issue here is for the period January 16, 2003 through January 15, 2007.

B. Procedural History

Plaintiffs filed their Complaint on August 23, 2016, (*see* Compl.), and Defendant filed an Answer on October 11, 2016, (*see* Answer (Dkt. No. 7)). The case was initially assigned to Judge Briccetti, and the Parties held an initial pretrial conference before Judge Briccetti on December 19, 2016. (*See* Dkt. (entry for Dec. 19, 2016).) At this conference, Defendant requested that this case be deemed related to *Trustees I*, and Judge Briccetti thereafter issued an Order requiring Defendant to submit a letter in support of this request, (*see* Order (Dkt. No. 12)), which Defendant did, (*see* Pope Letter). Plaintiffs did not oppose Defendant's position.

The case was accepted by the Court as related on January 5, 2017, (*see* Dkt. (entry for Jan. 5, 2017)), and the Court set a briefing schedule on the instant Motions, (*see* Mot. Scheduling Order (Dkt. No. 16)). Plaintiffs filed their Motion for Summary Judgment and accompanying

---

basis of *Trustees I*, stating that "the Funds invoked good faith efforts to audit the books and records of [Defendant], namely through written demands and the arbitration proceeding, . . . prior to bringing forth the present matter as well as [*Trustees I*]." (*Id.*)

papers on March 20, 2017. (*See* Dkt. Nos. 20–24, 26.) Defendant filed its consolidated opposition and Cross-Motion for Summary Judgment papers on April 28, 2017. (*See* Dkt. Nos. 29–33.) Plaintiffs filed their consolidated Reply and opposition papers in response to Defendant's Motion on May 24, 2017, (*see* Dkt. Nos. 36–37), and Defendant filed its Reply to Plaintiffs' opposition on June 9, 2017, (*see* Dkt. No. 38).

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same). "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse*

*Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of N.Y.*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .")).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21–88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

B.  Analysis

1.  Res Judicata

Defendant argues that, "[r]es judicata conclusively terminates the Funds' claims for the years previously sued upon by the Funds, unsuccessfully, in *Trustees I*." (Def.'s Mem. 4.)  At its core, res judicata "is a rule against the splitting of actions that could be brought and resolved together." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006).  "Under the federal rules of res judicata, a subsequent lawsuit will be barred where a party can show: (1) an adjudication on the merits in the previous action; (2) that the previous lawsuit involved the same parties, or those in privity with them; and (3) that the claims asserted in the subsequent suit were raised, or could have been raised, in the prior proceeding." *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 562 (S.D.N.Y. 2016), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (same).  Thus, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014).  "The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again." *Kamdem-Ouaffo*, 160 F. Supp. 3d at 562 (internal quotation marks omitted).  Therefore, res judicata may have the effect of "foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Nestor*, 466 F.3d at 70 (quoting *Migra v. Warren City Sch. Dist. Bd. of Education,* 465 U.S. 75, 77, n. 1 (1984)).

The prior proceeding satisfies the first element of the res judicata inquiry, as the Court's dismissal, with prejudice, of Plaintiffs' Complaint and Motion To Confirm the Arbitration Award in *Trustees I* constituted a final determination on the merits.  *See Trustees I*, 975 F. Supp. 2d at

9

376–77. In addition, the instant Action involves the exact same Plaintiffs and Defendant present in the prior case, thereby satisfying the second element of the inquiry. As to the third element, it is undisputed that Plaintiffs did not directly assert the claim at issue here, which is to have the Court compel an audit. Therefore, the relevant inquiry here is whether the claim to compel an audit "could have been[] raised in the prior action," as an alternative claim to the Motion To Confirm the Arbitration Award. *Monahan*, 214 F.3d at 285. Therefore, the doctrine applies "not only as to what was pleaded, but also as to what could have been pleaded." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985); *see also Magi XXI, Inc. v. Stato Della Citá Del Vaticano*, 22 F. Supp. 3d 195, 205 (E.D.N.Y. 2014) (same). Moreover, "the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that the facts essential to the second were already present in the first." *Waldman*, 207 F.3d at 110–11 (alteration, emphasis and internal quotation marks omitted). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence [as the claims previously raised]." *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999); *see also Waldman*, 207 F.3d at 110 ("[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories . . . ."); *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991) ("[I]t is the factual predicate of the several claims asserted that determines whether res judicata will apply, not a litigant's ability to devise a new legal theory." (internal quotation marks and italics omitted)). The Court considers "whether the underlying facts are 'related in time, space, origin, or motivation;' whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997)).

Defendant has satisfied the third prong of the res judicata inquiry. On January 19, 2011, Plaintiffs filed a Complaint alleging that Defendant had failed to comply with the directive of the arbitration award ordering Defendant to "produce any and all books and records for the audit period 1/16/2003 through 1/15/2007." *Trustees I*, 975 F. Supp. 2d at 367 (internal quotation marks omitted). Here, Plaintiffs seek the identical relief of production of the books and records for the audit period based upon the same contractual and statutory grounds, but now do so by way of their substantive right to an audit as opposed to the enforcement of an arbitration award that purportedly granted the right to an audit. (*See* Compl. ¶¶ 13–17, 25.) Despite this change in theory of *why* Plaintiffs are entitled to an audit—be it by confirmation of an arbitral award, contractual obligation, or a statutory right pursuant to ERISA—the current claim is precluded under the doctrine of res judicata. As the Second Circuit has made clear, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir. 1999) (internal quotation marks omitted).

Plaintiffs argue that the Court's refusal to enforce the arbitration award was simply a determination of "the arbitrability of [Defendant's] obligation to permit and cooperate in the conduct of an audit pursuant to the parties' Agreement." (Pls.' Opp'n 3 (emphasis omitted).) However, the Court in *Trustees I* did not definitively rule on whether Plaintiffs were entitled to the requested audit under a different legal theory, because Plaintiffs failed to seek any such claim. The Court noted that "Plaintiffs are doubtless authorized, in implementation of their fiduciary duties, to conduct an audit that is no broader in scope than necessary to achieve its objective and no more extensive than the scope of the trustees' authority," 975 F. Supp. 2d at 370 (internal quotation marks omitted), and in fact that there is, "ample authority for the

11

proposition that a suit in federal court to compel a payroll audit is more than an adequate forum for resolution of a dispute over trustees' audit rights," as opposed to arbitration. *Id.* at 372. Plaintiffs have identified no authority that would have barred them from seeking this alternative ground for the same ultimate relief of an audit that was sought by way of arbitration in *Trustees I*.[5] *See, e.g.*, *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Tri-State Acoustics Corp.*, No. 13-CV-05558, 2014 WL 4537481, at *2, 8 (E.D.N.Y. Sept. 11, 2014) (confirming an arbitration award which, inter alia, ordered an audit of the defendant's books while also issuing a separate order requiring the defendant to "submit[] to an audit of the defendant's books and records"). Moreover, Plaintiffs' claim regarding the arbitrability of the request to compel the audit arose out of the exact same contracts at issue in this case—the collective bargaining agreements and Trust Agreement. *See Trustees I*, 975 F. Supp. 2d at 369. Because it is "well-settled that multiple claims based upon a single contract are considered part of the same transaction . . . Plaintiff *could have* raised these . . . claims in the [prior proceeding]." *Kamdem-Ouaffo*, 160 F. Supp. 3d at 564. Accordingly, because Plaintiffs could have raised this exact alternative legal theory for an audit of the January 16, 2003 through January 15, 2007 period in *Trustees I*, but chose not to, this claim is barred by res judicata.

---

[5] In fact, at a hearing before the Court in *Trustees I*, Plaintiffs' then-counsel confirmed that such alternative grounds for the requested audit existed, but that Plaintiffs had chosen to pursue the sought-after relief only by way of arbitration. Specifically, counsel stated, "we want to do a books and records [audit], something we believe we're entitled to, both under the plan documents and under ERISA. To us . . . an arbitration is just an ends to a means." (*Trustees I* Hr'g Tr. (July 18, 2014) 6 (No. 11-CV-2341 at Dkt. No. 44).)

2. Timeliness

In the alternative, Defendant argues that Plaintiffs' claim for an audit for the period of January 16, 2003 through January 15, 2007 is time-barred. (Defs.' Mem. 7–8.) To determine the timeliness of Plaintiffs' claim, the Court must first determine the applicable statute of limitations and then determine when the claims accrued. The Parties agree that ERISA does not specify a statute of limitations for civil enforcement actions under 29 U.S.C. § 1132. Therefore, "[t]ime limitations for such claims instead are borrowed from the most analogous state statute of limitations." *Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp., Inc.*, 232 F. Supp. 3d 343, 351 (S.D.N.Y. 2017); *see also Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir. 2007) (same). New York's six-year limitations period for breach of contract claims under C.P.L.R. § 213 normally governs ERISA breach of contract claims. *See, e.g.*, *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983) (finding that "the six-year limitations period prescribed by New York's C.P.L.R. § 213 controls" an ERISA action to determine eligibility for pension benefits); *Bldg. Serv. 32BJ Health Fund*, 232 F. Supp. 3d at 351 ("For claims under § 1132 brought in New York, the Second Circuit has applied a six-year limitations period, borrowed from the most closely analogous New York State statute."). However, when the claims are based upon a direct violation of ERISA itself, as opposed to a contractual agreement, some courts in the Second Circuit have applied the three-year statute of limitations period under C.P.L.R. § 214.[6] *See, e.g.*, *Caufield v. Colgate-Palmolive Co.*, No. 16-CV-4170, 2017 WL 744600, at *5 (S.D.N.Y. Feb. 24, 2017) ("The New York statute

---

[6] "The following actions must be commenced within three years: . . . an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in [§§] 213 and 215 . . . ." N.Y. C.P.L.R. § 214(2)

13

of limitations applicable to [the] [p]laintiffs' disclosure claims is the three-year period governing statutory violations."); *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532–33 (S.D.N.Y. 2012) (holding that the appropriate limitations period is the three-year period governing statutory violations for alleged "non-compliance with the detailed requirements for [summary plan] explanations"), *aff'd in part and vacated in part on other grounds*, 555 F. App'x 77 (2d Cir. 2014). The Second Circuit has not yet opined on when an ERISA claim is subject to a three-year limitation period as opposed to a six-year limitation period.[7]

Ultimately, Plaintiffs' claim for an audit of for the period from January 16, 2003 through January 15, 2007 is time-barred under either statute of limitations. Plaintiffs filed their Complaint on August 23, 2016. (*See* Compl.) Therefore, the latest date that Plaintiffs' claim could accrue under the six year statute of limitations would be August 23, 2010. "Although state law determines the limitations period, federal law governs the accrual date for a claim under ERISA." *Ivanovic v. IBM Pers. Pension Plan*, 47 F. Supp. 3d 163, 167 (E.D.N.Y. 2014), *aff'd*, 620 F. App'x 64 (2d Cir. 2015); *see also Trustees of the United Plant v. C.P. Perma Paving Constr., Inc.*, No. 15-CV-1171, 2016 WL 1029507, at *4 (E.D.N.Y. Mar. 9, 2016) ("While state law provides the statute of limitations for ERISA claims, courts generally look to federal law to determine when a claim begins to accrue for purposes of the limitations period."). Under federal law, Plaintiffs' claim accrues when they "discover[], or with due diligence should have discovered, the injury that is the basis of the litigation." *Guilbert*, 480 F.3d at 149 (internal quotation marks omitted); *see also Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*,

---

[7] In fact, the Second Circuit expressly declined to reach the statute of limitations issue presented in *Osberg*. *Osberg*, 555 F. App'x at 80 ("[W]e need not conclusively decide whether [the plaintiff's] [ERISA] claim is subject to a three- or six-year statute of limitations.").

201 F.3d 44, 48 (2d Cir. 1999) (same)*; Trustees of the United Plant*, 2016 WL 1029507, at *4 (same).

Here, while the Parties do not specify the date that Defendant denied Plaintiffs' audit request, Plaintiffs' claim could not possibly have accrued after July 6, 2010, as that is the date that Plaintiffs filed their Notice of Intention to Arbitrate, according to the August 9, 2010 Opinion and Award of Arbitrator Roger E. Maher. (*See* Opinion and Award of Arbitrator ("Award") 1 (No. 11-CV-2341 at Dkt. No. 19).) Clearly, Plaintiffs knew that Defendant had denied their audit request at some time prior to the filing of the Notice of Intention to Arbitrate on July 6, 2010, as that denial was the basis for the arbitration itself. *See Trustees of the Sheet Metal Workers' Nat'l Pension Fund v. Steel & Duct Fabrication, Inc.*, 124 F. Supp. 3d 187, 198 (E.D.N.Y. 2015) ) ("[T]he defendants' refusal to submit to an audit triggered, independent of other legal consequences, [the] plaintiffs' right to seek and obtain an order ordering defendants to produce their books and records for an audit."). Therefore, the latest possible date of accrual for the initial audit request in connection with the January 16, 2003 through January 15, 2007 period would have been nearly six years and two months before Plaintiffs filed the instant Action on August 23, 2016. Accordingly, Plaintiffs' Complaint is time barred under either the three- or six-year statute of limitations period.

### III. Conclusion

For the forgoing reasons, Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Cross-Motion for Summary Judgment is granted. (Dkt. Nos. 20, 30.) The Clerk of Court is respectfully directed to terminate the aforementioned motions, grant judgment in favor of Defendant, and close this case.

SO ORDERED.

Dated: February 13, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE